**Opinion filed April 30, 2020**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00330-CV

_____

## IN THE INTEREST OF E.F.P. AND A.R., CHILDREN

**On Appeal from the 446th District Court**

**Ector County, Texas**

**Trial Court Cause No. E-18-004-PC**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court, after a de novo hearing, terminated the parental rights of the mother of E.F.P. and A.R. The mother filed a notice of appeal, and she presents three issues for this court's review. First, she asserts that her trial counsel was ineffective for failing to lodge numerous objections to the evidence. Then, in the next two issues, she challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding. We affirm.

*Termination Standards and Findings*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2019). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination

may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

Here, the trial court found that Appellant committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being; that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of their removal from Appellant for abuse or neglect. The trial court also found that termination of Appellant's parental rights would be in the best interest of the children. *See* FAM. § 161.001(b)(2).

*Background Facts*

The record reflects that Appellant had five children when the Department received the intake in this case.[1] The oldest two did not live with Appellant; they had been living with their maternal grandmother for several years. The other three children—eleven-year-old A.G., three-year-old E.F.P., and six-week-old A.R.— lived with Appellant and R.R. (A.R.'s father). The intake in this case originally stemmed from Appellant's failure, during a two-year period, to take A.G. to follow-up medical care. A.G. had a serious medical condition called Li-Fraumeni Syndrome, which predisposed her to cancer, and she had previously had renal cancer.

---

[1]We note that Appellant's sixth child was born while this case was pending below. As of the date of trial, the baby remained in Appellant's care.

Although in remission when this case was initiated, A.G.'s cancer returned, and she passed away while the case was pending below.

During its involvement with the family, the Department was concerned about domestic violence between Appellant and R.R., drug and alcohol abuse, and neglectful supervision of the children. A.G. claimed that she had been physically abused by Appellant, that she had been sexually abused by one of Appellant's previous boyfriends, and that Appellant and R.R. drank a lot and drove under the influence with the children in the car. E.F.P. volunteered early in the case that Appellant and R.R. "drank all the time" and that E.F.P. "hate[d]" R.R. because R.R. "always . . . beat up" Appellant. E.F.P. subsequently made similar statements to his counselor. In one of the traumatic incidents that E.F.P. told his counselor about, Appellant was the aggressor: E.F.P. said that he saw Appellant "throw [R.R.] on the floor." E.F.P. recalled being scared and crying upon witnessing the domestic violence between Appellant and R.R. By the time of trial, E.F.P. no longer wanted to talk about Appellant, and he prayed every night: "[P]lease don't let me go back, please, let me stay."

According to a Department employee, Appellant admitted that she drank alcohol daily and that she and R.R. engaged in domestic violence. At trial, however, Appellant denied that she had an alcohol problem and said that she and R.R. had never engaged in any physical violence. Appellant also denied that she used drugs—despite having tested positive twice for cocaine. Appellant completed most of the services in her service plan, but whether she did so successfully was a source of contention at trial. The dispute related to Appellant's failure to disclose to her service providers that she continued to be in a relationship with R.R. Furthermore, Appellant missed some of the scheduled visits with her children, and the Department was not able to verify her employment or housing situation.

After the voluntary safety plan failed, the children were removed and placed with family members. E.F.P. and A.R. were ultimately placed with fictive kin (who were friends of the family) because the children's maternal grandmother was overwhelmed and unable to care for all four of the children that had been placed with her. Over a year later, E.F.P. and A.R. remained in the home of the fictive kin and were doing very well there. The fictive kin provided E.F.P. and A.R. with a safe and appropriate home. A strong bond had developed between the fictive kin and both children. The fictive kin wished to adopt E.F.P. and A.R., who at the time of the trial de novo were five years old and two years old, respectively.

The caseworker testified that termination of Appellant's parental rights would be in the children's best interest. The children's attorney ad litem believed that termination of the parents' rights would be in the best interest of E.F.P. and A.R. The children's guardian ad litem, a CASA volunteer, agreed. The fictive kin did not believe that it would be in the children's best interest to return them to Appellant. E.F.P.'s counselor believed that it would be in E.F.P.'s best interest to remain with the fictive kin and to not be reunited with Appellant. The Department's goal for E.F.P. and A.R. was termination of the parents' parental rights and adoption by the fictive kin.

*Analysis*

In her first issue, Appellant contends that she did not receive effective assistance of counsel at trial because counsel failed to object to hearsay statements. Appellant specifically complains of ninety-eight separate instances from the hearings below. She divides these ninety-eight instances into four categories: hearsay statements of A.G., E.F.P., and A.R.; hearsay statements about the results of Appellant's drug tests; hearsay statements of "various third parties"; and the continuous incorporation of the above-mentioned hearsay statements throughout the hearings below.

5

A parent that has a statutory right to counsel in a parental termination case has the right to "effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). To prevail on a claim of ineffective assistance of counsel, a parent must generally show (1) that trial counsel's performance was deficient and (2) that the deficient performance was so serious as to deny the parent a fair and reliable trial. *J.O.A.*, 283 S.W.3d 336, 341–42 (Tex. 2009) (following the two-pronged analysis of *Strickland v. Washington*, 466 U.S. 668 (1984)); *M.S.*, 115 S.W.3d at 545 (same). In the present case, Appellant has failed to satisfy the *Strickland* test.

For Appellant to successfully argue on appeal that her trial counsel's failures to object amounted to ineffective assistance, Appellant must show that the trial court would have erred by overruling such objections. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). Most of the statements about which Appellant complains on appeal either were not hearsay, *see* TEX. R. EVID. 801(e)(2) (opposing party's statement), or fell into an exception to the hearsay rule, *see* FAM. § 104.006 (hearsay statement of child abuse victim); TEX. R. EVID. 803(3) (then-existing mental, emotional, or physical condition), 803(4) (statement made for medical diagnosis or treatment). Counsel was not ineffective for failing to object to admissible evidence.

One notable exception to the evidence being admissible was the caseworker's testimony that she was told by service providers that, even though Appellant had completed the service, she had not successfully completed the service because she had not been honest about her continued relationship with R.R. Trial counsel had previously objected when another employee of the Department attempted to testify regarding statements made to her by a service provider about Appellant's performance in that service. Counsel's hearsay objection was sustained at that time. However, trial counsel subsequently failed to object to similar evidence. The record is silent as to counsel's rationale. However, we believe that, based on the record

6

before us, trial counsel's subsequent failure to object may have been trial strategy, such as an attempt to impeach the caseworker or show her bias. Counsel was keenly aware that the caseworker's testimony contained hearsay; counsel pointed that fact out in his questioning of the caseworker: "And then that makes that unsuccessful completion hearsay, because it's something somebody told you outside of court, but we don't have any proof of that, right?" Trial counsel was able to show that the caseworker had no e-mails or other documentary support for her assertions despite having testified that she had received e-mails from the service providers regarding Appellant's unsuccessfulness in the services.

Despite the hearsay, however, the caseworker testified as to her own opinion that, even though Appellant had completed several of her services, she had not successfully done so because she had hidden her relationship with R.R. and because she had not demonstrated an ability to apply what she had learned in those services. Appellant admitted during the hearing before the associate judge that, although she had continued to be in a relationship with R.R., she could not recall informing her service providers of that fact.

Another notable exception to the evidence being admissible was the caseworker's testimony that Appellant tested positive twice for cocaine. The caseworker also testified that Appellant tested negative on one occasion. Appellant testified the she did not do drugs and that the two positive results were false positives as shown from the negative results on the re-tests. Regardless of whether counsel had objected to the testimony about the positive results of the drug tests, other evidence was properly admitted regarding Appellant's refusal or failure to submit to random drug testing on at least twelve occasions and Appellant's abuse of alcohol.

On the record before us, we cannot hold that trial counsel rendered deficient performance. Thus, Appellant has not met the first prong of *Strickland*. *See M.S.*, 115 S.W.3d at 545–46. Additionally, we cannot hold that the result of the proceeding

7

would have been different but for trial counsel's alleged deficiencies; Appellant has failed to establish that she was denied a reliable trial and, thus, has not met the second prong of *Strickland*. *See id.* at 545. Accordingly, we overrule Appellant's first issue on appeal.

In her second and third issues, Appellant challenges the legal and factual sufficiency of the evidence to support the finding that termination of her parental rights would be in the best interest of the children. Appellant specifically points to the fact that the Department had not removed Appellant's sixth child from Appellant's care—a child that was born to Appellant and R.R. while this case was pending below. However, the Department's failure to remove that baby from Appellant's care does not control any findings related to the best interest of E.F.P. and A.R.

We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of both children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of Appellant and of the fictive kin, the plans for the children by the Department, Appellant's inability to provide a safe environment for the children, the stability of the fictive kin's home, Appellant's abuse of alcohol, Appellant's failure to submit to numerous drug tests, and the existence of domestic violence between Appellant and R.R., we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental

rights is in the best interest of both children. *See id.* We overrule Appellant's second and third issues.

*This Court's Ruling*

We affirm the trial court's order of termination.


KEITH STRETCHER

JUSTICE


April 30, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.